# United States Court of Appeals for the Federal Circuit

05-3347

GAYLE J. SNYDER,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Randall J. Andersen, Kay & Andersen, S.C., of Madison, Wisconsin, argued for petitioner.

Thomas D. Dinackus, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director. Of counsel on the brief was Wade Plunkett, Attorney, Office of Personnel Management, of Washington, DC.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3347

GAYLE J. SNYDER,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

_____

DECIDED: September 13, 2006

_____

Before RADER, Circuit Judge, PLAGER, Senior Circuit Judge, and PROST, Circuit Judge.

Opinion for the court filed by Circuit Judge PROST. Concurring opinion filed by Senior Circuit Judge PLAGER.

PROST, Circuit Judge.

Gayle J. Snyder petitions for review of the final order of the Merit Systems Protection Board ("Board"). The Board affirmed the decision of the Office of Personnel Management ("OPM") denying the petitioner's claim for survivor annuity benefits under the Civil Service Retirement System ("CSRS") as the former spouse of Robert L. Ruff. Snyder v. Office of Pers. Mgmt., No. CH0842040399-I-1 (M.S.P.B. July 27, 2005). We vacate and remand.

BACKGROUND

Gayle Snyder and Robert Ruff divorced in 1993 after over thirty years of marriage. The Wisconsin divorce court entered an order entitled "Addendum to Marital Settlement Agreement for Qualified Domestic Relations Order-Federal (CSRS) Plan" ("Court Order"). The Court Order was submitted to OPM which notified Snyder that the order was suitable for processing and would provide her with (1) an apportionment benefit payable on Ruff's retirement, and (2) a survivor annuity payable upon his death.

Ruff was an employee of both federal and state governments during the entire marriage. Several years after the divorce, in July 2001, he retired from federal government service. Although OPM had previously notified Snyder that the Court Order was sufficient to provide her with a survivor annuity, it changed its determination. Between 2001 and 2004, Snyder and OPM exchanged several letters in which OPM made various determinations about the order's suitability. Finally, in a letter she received March 15, 2004, OPM stated that the order did not comply with OPM's regulations for the awarding of a former spouse survivor annuity. Snyder appealed OPM's finding to the Board.

While Ruff lives, the Court Order provides no payments to Snyder prior to Ruff's retirement. After his retirement, the Court Order provides Snyder with 43.11% of the actuarial equivalent value of Ruff's pension benefit which accrued during the period of their marriage.

In providing for Snyder after Ruff's death, the Court Order contains the following provision:

VI. DEATH OF PARTICIPANT AND SURVIVOR BENEFITS - PROVISIONS FOR TREATMENT OF FORMER SPOUSE OF

> PARTICIPANT AS SURVIVING SPOUSE OF PARTICIPANT FOR PURPOSES OF PRE-RETIREMENT SURVIVING SPOUSE PENSION BENEFIT, (AND/OR) OTHER SURVIVOR BENEFITS.
> The assignment of benefits to the Alternate Payee shall not be reduced, abated or terminated as a result of the death of the participant. Pursuant to Section 414(p) (5) of the Code, the former spouse of the Participant, namely Gayle S. Ruff, shall be treated as the surviving spouse of the Participant for purposes of Pre-retirement Survivor benefits accrued during the period described in Section II C about [sic] 4 in accordance with Sections 401(a) (ii) and 417 of the Code.

Snyder argued to the Board that this provision provides her with a post-retirement survivor annuity.

The Board's administrative judge found that "[t]he only permissible interpretation of the agreement is . . . that Appellant is to be treated as surviving spouse only for Pre-retirement survivor benefits." Snyder v. Office of Pers. Mgmt., No. CH0842040399-I-1, slip op. at 4 (M.S.P.B. Sept. 7, 2004). The administrative judge rejected Snyder's argument that the first sentence of Section VI must provide for post-retirement survivor benefits. Rather, he found that it meant that "any Pre-retirement lump sum payment shall not be reduced, abated or terminated as a result of the death of the Participant." Id., slip op. at 5.

The administrative judge also noted that Snyder argued that it was the parties' intent to provide her with a lifetime benefit, but held that because the Court Order is clear and unambiguous on its face, the use of parol evidence would be inappropriate. Id. Nevertheless, the administrative judge noted that Ruff's testimony was credible and consistent with his interpretation of the order. Id.

The administrative judge's initial decision became the final decision of the Board after the Board denied the petition for review. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

05-3347                                    3

DISCUSSION

Board decisions may be set of aside if they are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence . . . ."  5 U.S.C. § 7703(c) (2000).

Within the CSRS, a post-retirement survivor annuity provides the survivors of an employee with recurring payments.  A former spouse may participate as a survivor to an employee's survivor annuity pursuant to statute:

> a former spouse of a deceased employee . . . is entitled to a survivor annuity . . . if and to the extent <u>expressly provided for</u> . . . in terms of any decree of divorce or annulment or any court order or court-approved property settlement agreement incident to such decree.

5 U.S.C. § 8341(h)(1) (2000) (emphasis added).  OPM's regulations provide further guidance regarding how a survivor annuity must be described in a court order in order to properly provide the former spouse with a survivor annuity.  5 C.F.R. §§ 838.801-807.

On appeal, Snyder argues, as she did to the Board, that Section VI of the Court Order entered at her divorce provides her with a post-retirement survivor annuity.  She asserts that the Board erred in its determination that the first sentence of the section provided only a pre-retirement benefit.  Rather, she argues that the intent of the parties and the clear language of the agreement evince the meaning of the order—to provide her with a lifetime benefit.  She argues that the administrative judge erred in permitting Ruff's testimony regarding the intent of the agreement while excluding hers.  She also argues that because OPM waited until after her former spouse's retirement to rescind its initial decision, it should be estopped from doing so.

A.

First, we address the administrative judge's finding regarding the meaning of Section VI of the Court Order. Snyder concedes that the second sentence of Section VI means only that she will be treated as the survivor for purposes of a pre-retirement survivor benefit. However, she disagrees with the administrative judge's finding that the first sentence of the section also refers to a pre-retirement survivor benefit. The first sentence states, "The assignment of benefits to the Alternate Payee shall not be reduced, abated or terminated as a result of the death of the participant." Since the only benefits to which she was entitled under the agreement were a portion of Ruff's pension, Snyder argues that this was the benefit that should not be reduced as a result of his death. Snyder also states that the administrative judge may have reached an erroneous conclusion based on a finding that Snyder's benefits would necessarily decrease if they were converted from being a portion of Ruff's pension to a post-retirement survivor annuity. She states that this was erroneous because a post-retirement survivor annuity is not necessarily less than her apportionment of Ruff's pension.

OPM agrees with Snyder that the administrative judge erred in finding that the first sentence of Section VI refers to a pre-retirement survivor benefit. Agreeing with Snyder's contentions, OPM states, "[i]t would make no sense to state that survivor benefits cannot be reduced or terminated by the very event that would trigger entitlement to those benefits." Therefore, OPM agrees with Snyder that "the first sentence of Section VI must address benefits that Snyder was already receiving at the time of Mr. Ruff's death." That is, the first sentence must be referring to the "portion of

Mr. Ruff's retirement benefits [Snyder would be receiving post-retirement] pursuant to Section II.C . . . ."

OPM therefore repudiates the administrative judge's analysis and both parties agree that the administrative judge erred in his rationale for finding that the first sentence of Section VI did not provide for a post-retirement survivor annuity. We therefore proceed to the alternative basis that OPM presents on appeal as to why the first sentence of Section VI is deficient to provide the benefit.

B.

OPM argues that Section VI of the Court Order is deficient for purposes of providing Snyder with a post-retirement survivor annuity because it does not satisfy 5 C.F.R. § 838.803(b). The regulation cited by OPM contains two requirements:

> Any court order that provides [1] that the former spouse's portion of the employee annuity shall continue after the death of the employee or retiree, by using language such as "will continue to receive benefits after the death of" the employee, that the former spouse "will continue to receive benefits for his (or her) lifetime," or "that benefits will continue after the death of" the employee, but does not [2] use terms such as "survivor annuity," "death benefits," "former spouse annuity," or similar terms is not a court order acceptable for processing.

5 C.F.R. § 838.803(b) (2006).

Here, Section VI of the Court Order includes the sentence, "The assignment of benefits to the Alternate Payee shall not be reduced, abated or terminated as a result of the death of the participant." OPM states that this language is "equivalent to the insufficient language described in the first part of [the OPM regulation]," so that the second condition must be met in order for the clause to be sufficient under the regulation. But, OPM argues, the second condition of its regulation is not met—that is,

the court order does not "use terms such as 'survivor annuity,' 'death benefits,' 'former spouse annuity,' or similar terms." 5 C.F.R. § 838.803(b) (2006).

Snyder responds that several sections of the Court Order refer to a survivor annuity. First, the title of Section VI states that the section covers "PRE-RETIREMENT SURVIVING SPOUSE PENSION BENEFIT, (AND/OR) OTHER SURVIVOR BENEFITS." The regulation permits use of the term "death benefits" to satisfy its second requirement and the court order uses the term "survivor benefits" in the title to the very section which meets the first prong of the regulation's test. The government does not argue that the language "other survivor benefits" is not sufficient to satisfy the regulation's second condition. Rather, during oral argument, OPM argued solely that this section's reference to "OTHER SURVIVOR BENEFITS" did not meet the requirements of the regulation because it is preceded by the conjunctive term "and/or." It argued that if benefits other than pre-retirement benefits were expressly intended in the title, the title would not have used the term "and/or." This court cannot agree that a reference to "survivor benefits" that would otherwise satisfy the OPM regulation becomes insufficient because it is preceded by the term "and/or."[1] We therefore turn to this court's precedent as to the requirements for "expressly providing" for a survivor annuity.

C.

This court has previously discussed the requirements of how a court order must expressly provide for the award of a survivor annuity as required by 5 U.S.C.

---

[1] Furthermore, we see no problem with the "and/or" language. The title may provide for pre-retirement "and" post-retirement benefits. However, obviously, Snyder would only actually receive pre-retirement "or" post-retirement survivor benefits.

§ 8341(h)(1). When words such as "CSRS survivor annuity" are used, obviously, a court order will provide for the benefit. However, such "'magic words' are not required to assign a CSRS survivor annuity in favor of a former spouse." Fox v. Office of Pers. Mgmt., 100 F.3d 141, 146 (Fed. Cir. 1996). When the magic words are not used, Fox provides the analysis a tribunal must undertake to determine whether a court order provides for the survivor benefit. Id.

Specifically, to determine that a court order without any magic words does provide the survivor annuity benefit, the tribunal must first determine whether the order contains a pertinent clause regarding a survivor annuity. Id. If so, then it must inquire whether the operative terms in that clause can "fairly be read as awarding" the annuity. Id. If so, then it must "examine any evidence introduced concerning the marriage parties' intent and the circumstances surrounding the execution of the document" to interpret the clause. Id. If the evidence only dictates that the "clause refers to a CSRS survivor annuity—then it is legal error to conclude that the document has not 'expressly provided for' the award of a survivor annuity" as required by 5 U.S.C. § 8341(h)(1). Id.

Here, there is no dispute that Section VI of the Court Order is a pertinent clause which can fairly be read as providing for a post-retirement survivor annuity. Indeed, the government concedes that the first sentence can only be read to mean that Snyder's post-retirement benefits would not be reduced due to Ruff's death. This is clearly contemplated by resort to a post-retirement survivor annuity. Under Fox, the Board is thus required to examine evidence, to the extent such evidence exists, to determine whether it dictates another possible meaning for the clause.

## CONCLUSION

Because the first sentence of Section VI of the Court Order can fairly be read to refer to a post-retirement survivor annuity, we vacate the Board's decision and remand for a determination of the meaning of the clause.

<u>VACATE AND REMAND</u>.

# United States Court of Appeals for the Federal Circuit

05-3347

GAYLE J. SNYDER,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

PLAGER, <u>Senior Circuit Judge</u>, concurring.

I concur in the decision to remand this case to the Board for further consideration, as that at least is a first step to correcting what I perceive to be an egregious error by the Government. I would have gone further and decided the case in Ms. Snyder's favor without a remand.

In the first place, I think the Wisconsin court order, filed with OPM in 1993, can be read as it obviously was intended—to grant Ms. Snyder, in addition to a percentage of her ex-husband's retirement allocation, two types of death benefits: a relatively insignificant benefit (the lump sum) should her ex-spouse predecease her *before* he retires, and a lifetime benefit should her ex-spouse predecease her *after* he retires (when her share of his retirement allocation would terminate as a result of his death). The two-part heading and the two distinctive sentences contained in paragraph VI of the court order can readily be understood to so provide. And indeed that is the way the Government expressly read the order for the eight years between its filing with OPM

and the ex-husband's retirement from federal service in 2001. The Government's argument in this court, that the only death benefit the Wisconsin court order was intended to grant her was the de minimis lump sum benefit if he died between the divorce and retirement, is wholly unpersuasive and indeed, in light of the record before us, borders on the frivolous.

That record shows that OPM advised Ms. Snyder in writing in 1994 that the court order was acceptable under its regulations for former spouse benefits, and that "[b]enefits are not payable until the employee separates from the Federal service and applies for benefits." Though this letter did not specifically address the lifetime benefit following the employee's death, it clearly did not consider a pre-retirement death benefit to be the only survivor benefit available. Furthermore, in a subsequent letter that same year, intended to be a "clarification of the benefits awarded to you by the court," Ms. Snyder was advised that "the court awarded you two types of benefits—apportionment and survivor annuity. . . . In survivor annuity, the benefit become [sic] payable after day after [sic] Mr. Ruff's death." This letter left little doubt about OPM's understanding that the court order included a survivor benefit applicable after the ex-husband's death.

That understanding was confirmed in August 2001, now seven years after the earlier letters, and following the ex-husband's (Mr. Ruff's) retirement from federal service that July. At that time OPM wrote a letter to Ms. Snyder stating that OPM "will honor a court order we have received awarding you a survivor annuity as the former spouse of Robert L. Ruff." Since her ex-husband was now retired, that letter could only refer to the post-retirement lifetime survivor annuity and not the pre-retirement lump-sum benefit. This letter was followed a week later with another letter. This second

letter acknowledged Ms. Ruff's application for her apportioned share of Mr. Ruff's current retirement allocation, and specifically reconfirmed her entitlement to the survivor annuity as well.

Suddenly, within weeks of these two letters, OPM advised Ms. Snyder that, based on a new reading of the language of the court order, "we have determined that your [sic] are not entitled to a former spouse survivor annuity." Adding insult to injury, because Mr. Ruff had now retired it was the case that, pursuant to OPM regulations, Ms. Snyder was barred from obtaining any correction to or amendment of the original Wisconsin court order.

For policy reasons, estoppel against the United States Government generally requires something more than the circumstances which would support estoppel against a private party. See Heckler v. Cmty. Health Servs., 467 U.S. 51, 60 (1984). Although the Supreme Court has not been precise as to what it is, 'something more' has been described by this court as "some form of affirmative misconduct." Zacharin v. United States, 213 F.3d 1366, 1371 (Fed. Cir. 2000); see also United Pac. Ins. Co. v. Roche, 401 F.3d 1362, 1366 (Fed. Cir. 2005).[1] In Zacharin, finding no affirmative misconduct by the Government, we noted that "[t]here is no evidence that any representative of the government gave Mr. Zacharin incorrect legal advice . . . , [and] there is no evidence that [government representatives] made any misrepresentations to Mr. Zacharin with regard to [the contract in dispute]." 213 F.3d at 1371.

---

[1] Further, an estoppel against the Government cannot result in the payment of money not otherwise provided for by law, an issue not relevant here since survivor annuities are specifically authorized. See Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 423-24 (1990).

In the case before us, the record is replete with legal representations by government representatives with regard to the scope and meaning of the Wisconsin court order. For more than seven years, until after no correction was possible, OPM represented that Ms. Snyder was entitled to a post-retirement survivor benefit; only then did OPM without warning rescind its previous assurances that the Wisconsin court order was in full compliance. These representations when first issued and later confirmed were either correct, and their subsequent rescission was in error, or they were clear misrepresentations on their face.

The statute of limitations for many civil wrongs is three years, and even civil actions involving the Government itself are barred after six years. Basic fairness dictates that the Government, after giving repeated assurances that all is well, cannot wait years, until after no remedy is possible, before suddenly perceiving a documentary glitch that could have been seen, and corrected, anytime during those years.

At a minimum the Government owes Ms. Snyder the value of the opportunity costs foregone during those eight years when she could have been making other arrangements for her well-being should Mr. Ruff predecease her. The simplest measure of those opportunity costs is the survivor annuity the Government had already promised. On the egregious facts of this case, I would estop OPM from decreeing that the court order is somehow deficient, and I would mandate that Ms. Snyder is entitled to the survivor benefit ordered by the Wisconsin court and originally promised by OPM.